## Case No. 15,802.

### UNITED STATES v. MOORE.

[2 Brock. 317.] [1]

Circuit Court, D. Virginia. May Term. 1828.

MARSHAL—LIABILITY FOR FAILURE OF DEPUTY TO SERVE PROCESS—ARREST OF DEBTOR—MEASURE OF DAMAGES.

1. A marshal is liable. upon his official bond, for the failure of his deputy to serve original process; but the measure of his liability, is the extent of the injury received by the plaintiff. produced by such negligence. If the loss of the debt, be the direct legal consequence of the failure to serve the process, the amount of the debt is the measure of damages; but the mere failure to execute the process, does not, in itself, necessarily infer the loss of the debt to the plaintiff. by the negligence of the officer, because, the plaintiff might sue out other process, on the failure of the officer to execute the first process. The question, whether the loss of the debt was, or was not, the direct legal consequence of the negligence of the officer, is a question of fact. depending on circumstances, of which the jury must judge.

2. Where a writ of capias ad respondendum, comes to the hands of a deputy-marshal who arrests the debtor, and the debtor thereupon, pays to the deputy the amount of the debt for

which he was sued, and the officer discharges the debtor from custody, and returns the writ, "Debt and costs satisfied," this is not, an official act which binds his principal. The deputy-marshal is a mere ministerial officer, and he has no right to adjust the debt, and make himself responsible to the plaintiff. He is bound to pursue the mandate of the writ, and that requires him to arrest the debtor, and take bail. The discharge of the debtor from custody, without taking bail, is, indeed, a misfeasance in office, for which his principal, the marshal, is responsible; but he is only responsible to the extent of the injury done to the plaintiff. The return of the deputy, shows that no bail was taken, and if, by taking out other process, the plaintiff could have secured his debt—which is a fact to be determined by the jury—the loss of the debt to the plaintiff, is not the necessary legal consequence of the conduct of the deputy, and no injury, in a legal sense, is done to the plaintiff thereby.

[Distinguished in Mosby v. Mosby, 9 Grat. (Va.) 605.]

This was an action of debt, brought upon an official bond, executed by the defendant's intestate, Andrew Moore. The bond was executed in 1815, in the penalty of $20,000, and the condition of the bond was, that the principal obligor, Andrew Moore, should faithfully discharge the duties of marshal of the district of Virginia. This suit was brought in June, 1825. The declaration claimed the penalty of the bond, and the defendant pleaded, conditions performed. The plaintiffs filed their replication, assigning several breaches of the condition of the bond, viz.: 1. That on the 16th day of May, 1816, an execution in favour of the United States, was issued from the district court of the United States, held at Norfolk, upon a judgment rendered against John H. Fawn, for $1548.85. with interest from the 14th day of January, 1816, directed to the marshal of the Virginia district, which came to the hands of William P. Foster, the duly qualified deputy of Andrew Moore, and that by' virtue thereof, the amount of the execution was levied, and recovered by the said deputy, for which he had failed to account to the United States. 2. That on the 18th day of May, 1816, a writ of capias ad respondendum was issued against Goodnow & Wales, debtors of the United States, at the suit of the United States, for the sum of $922.95, with interest from the 11th day of May, 1816, directed to the marshal of the Virginia district; and on the 2d day of July, another writ of capias ad respondendum was issued against Thomas Powell, also a debtor of the United States, at the suit of the United States, for the sum of $185.36 with interest from the 19th of June, 1816, also directed to the marshal of the Virginia district, which writs were issued from the clerk's office of the same court, and at the dates of their emanation respectively, came to the hands of the said William P. Foster, the deputy of Andrew Moore; but the deputy utterly neglected to execute, or make due return on either writ, whereby the United States was prevented from recovering judgments against each of their debtors. and the debts were wholly lost to them. 3. That the

debts mentioned in the second breach being due to the United States, and the writs having been issued and come to the hands of the said deputy, as therein set forth, the deputy arrested the debtors by virtue thereof, who thereupon respectively paid to him the full amount of their debts, and the deputy forthwith discharged the defendants from arrest, and wilfully failed to make due return of the said arrests or either of them, or to account for, and pay the amounts so levied to the United States, whereby the United States were prevented from obtaining judgments against their debtors, and the debts were wholly lost to the plaintiffs. 4. That the money mentioned in the first breach, having been levied; and the writs mentioned in the second breach having issued, and come to the hands of the said deputy, and the amount of the debts mentioned in the third breach having been received by the deputy, as therein set forth, respectively; on the 16th of November, 1819, on the motion of the United States, by their attorney, the said district court of the United States, held at Norfolk, adjudged, that Andrew Moore was liable for the three debts above recited, and that an attachment should issue against him for his failure to pay them; and the plaintiffs averred that the said judgment and the attachment it awarded, had not, in any manner been discharged or satisfied, and that the debts remained wholly unpaid.

At the May term of this court, 1828, the jury found the following special verdict, assessing contingent damages: "We find for the plaintiffs on the first breach assigned, and assess their damages to the value of $1548.85, with interest thereon, from the 14th of January, 1816, till paid. And we find for the plaintiffs on the second breach assigned, and assess their damages, by reason of that breach, to the value of $1108.21, with interest on $922.95, from the 11th of May, 1816, and interest on $185.36, from the 9th of June, 1816, till paid. And we find for the plaintiffs on the third breach assigned, and assess their damages, by reason of that breach, to the same amount and interest assessed on the second breach. And we find for the plaintiffs on the fourth breach assigned, and assess their damages, by reason of that breach, to the value of $2657.06, with interest on $1548.85, part thereof, from the 14th of January, 1816, and on $922.95, another part thereof, from the 11th of May, 1816, and on $185.36, the residue thereof, from the 9th of June, 1816, till paid. And if the court shall render judgment for the plaintiffs on the fourth breach assigned, then we find for the defendant on the other breaches; and if the court shall be of opinion that the plaintiffs are not entitled to judgment on our finding on that breach, and shall be of opinion that they are entitled to recover on either the second or third breach, then we find for the defendant on that one of the said second or third breaches, on which judgment shall not be entered, so that, in any event, the total amount of damages assessed against the de-

fendant, on all the breaches for which judgment is to be rendered, shall not exceed the amount above assessed on the fourth breach."

Before MARSHALL, Circuit Justice, and BARBOUR, District Judge.

MARSHALL, Circuit Justice. This is an action of debt brought upon the official bond of the marshal of this district, the intestate of the defendant, upon which the jury have found a verdict which assesses contingent damages, dependent on a case stated by the parties. This case is so stated, as to require the court to take into view the instructions which would have been given to the jury at the trial, had instructions been asked.

The first breach assigned in the replication is, that the moneys were received by the deputy of the marshal for the United States, on executions placed in his hands, which money has never been paid over. On this breach no controversy arises.

The second breach assigned is, that two writs of capias ad respondendum were issued against debtors of the United States, which were placed in the hands of the same deputy, who neglected them or either of them, or to return them or either of them,—"whereby, the United States were prevented from recovering judgment against each of the said debtors, and each of them have been, and are, totally lost to the said United States." Damages are assessed to the amount of these two debts. The case stated, is that two writs of capias ad respondendum, against two several debtors of the United States, were placed in the hands of the deputy, who, instead of executing them, received the sums due from the several defendants, and made return thereof on the writs, after which the suits were dismissed. The United States have never received this money, and they now claim it from the estate of the marshal. In this second assignment of breaches, the receipt of the money is not brought into view. The neglect of duty in not serving the process, is the fault alleged to have been committed by the officer; and for this neglect his principal is unquestionably liable. But what is the extent of his liability? But one general answer can be given to the question. As in all other instances of neglect, he is liable to the extent of the injury produced thereby. This is to be ascertained by jury. The replication alleges that the debt has been lost thereby; and if this fact be as alleged, the amount of the debt is the measure of damages. But this is a subject for the consideration of the jury. It was not submitted to the jury, and has been transferred to the court. If the loss of the debt was the direct and legal consequence of this neglect, the verdict ought to stand; but if this be a subject on which the judgment of the jury, under the instruction of the court ought to be exercised, then it would be improper in the court to decide upon it until that judgment is exercised. It is too obvious to require discussion, that the loss of a debt

is not the necessary consequence of neglecting to serve the first process which comes to the hands of the officer. The law provides for new process; and the question, whether that new process may not be as available to the plaintiff as the original process, depends on circumstances, of which the jury must judge. If, in this case, the plaintiff has been prevented from issuing new process by the act of the officer, that is not alleged in this part of the replication. If it may be given in evidence on this real assignment, then we must look in the act which is alleged to have arrested further proceedings. That act is the receipt of the money due to the United States. If the officer was not authorized to receive this money, his receipt of it could not bind the United States, nor prevent further proceedings according to law. If he was authorized to receive it, the defendant will admit that the plaintiff could proceed no farther; and that the loss of the debt is the consequence of not serving the process, and receiving the money. This question will be properly considered, under the third breach assigned in the replication.

3. The third breach is, that the officer did arrest the said debtors, as commanded by the said process, who, thereupon, respectively paid to the said deputy, the full amounts of their respective debts aforesaid; and in consideration thereof, the said deputy did then and there discharge the said debtors from the arrests aforesaid, and willfully failed to make due return of the said arrests, or either of them, or to account for and pay the amounts so received from said debtors, or any part thereof, to the said United States, whereby the said United States was prevented from obtaining judgments against their said debtors for their said debts, and the said debts were, and are wholly lost to the said United States. To support this breach, it would be necessary to show, in the first place, that the debtors were arrested. This is not proved; but may, and perhaps ought to be, assumed by the jury, from the facts admitted in the case. The material inquiry, then, presents itself: Was the receipt of the money an official act? Was it authorized by the mandate of the writ? We are decidedly of opinion that it was not. The mandate of the writ was to take the person of the defendants mentioned therein, and to have them before the court, to answer the United States in a plea of debt, &c. A controversy exists between the parties, which is to be adjusted, not by the officer, but by the court. His duty is ministerial, not judicial. It is to bring the debtor into court to receive its judgment, not to render that judgment. The sum actually due, is, generally, less than that demanded in the writ, and in these cases, it was considerably

less. The officer does not know officially the real amount of the debt, and, consequently, cannot adjust it and receive the money. If he is not authorized to ascertain the sum due, and to receive that sum, neither is he authorized to receive the whole sum mentioned in the writ, and to discharge the persons arrested. His duty is prescribed by the words of the writ; he is to obey its mandate. It would be time misapplied to enter into a consideration of the consequences of permitting the officer to depart from the mandate of the writ, and to make himself accountable to the United States, when not authorized by law so to do. It is enough to say that the writ did not authorize him to receive the money, and that its receipt was not an official act. Since the money was not received by virtue of the writ, with the authority of which the deputy was entrusted, his principal cannot be chargeable by the legal force of that receipt; if he is chargeable, it is in consequence of the official acts performed or omitted by his deputy. The act performed is, making his return, which is, "Debt and cost satisfied." The charge in the replication, is, that upon receiving the money he discharged the debtors. That this proceeding is a misfeasance in office, which subjects the principal to the action of the United States, is not controverted; but on this breach, as on the second, the amount of damages depends on the amount of injury. The return of the officer did not prevent the United States from taking such farther steps as are authorized by law; if the return shows service of the process, the plaintiffs might proceed against the defendants and the marshal for want of bail; if it does not show service, or if it shows a discharge, the plaintiffs might sue out a new process. The return that the debt was satisfied, did not bind the United States. The amount of injury, therefore, depends on all the circumstances, and those circumstances must be weighed by a jury. The counsel for the United States insists, that the money received by the deputy, is the measure of damages sustained by the United States, that the deputy is responsible for the sum so received, and as he received it by colour of his office, the principal is also responsible to the same extent. But if the receipt of this money did not stop the United States, if it was not an official act authorized by the process or by law, the loss of the debt does not appear to be a necessary consequence from the return on the writ, or the neglect to take bail.

NOTE. After the above instructions were given, the jury found for the plaintiffs on the first breach assigned, as in the special verdict; for the defendant, on the second and fourth breaches, and for the plaintiffs on the third, assessing their damages on that breach at one cent.