## New Hampshire Savings Bank vs. Benjamin F. Varnum.

Where a debtor and his attaching creditors agree in writing that the attached goods may be sold, by the deputy sheriff who attached them, either at public or private sale, at his discretion, and that the proceeds shall be held to respond the judgments, which may be rendered against the debtor, according to the Revised Statutes, and the deputy sells the goods, partly at private and partly at public sale, and receives the money therefor, but neglects to apply it in satisfaction of executions, issued on judgments recovered by such creditors, and seasonably put into his hands, the sheriff is answerable for such default of his deputy.

This was an action against the sheriff of Middlesex for the default of his deputy, John Kimball, in not serving and returning an execution in favor of the plaintiffs against H. W. Hastings. It appeared, on the trial before *Wilde*, J. that, in November, 1836, Kimball attached, on a writ sued out by the plaintiffs against said Hastings, a stock of goods, subject to four prior attachments; that the plaintiffs and the prior attaching creditors, severally recovered judgment against Hastings, took out executions and delivered them, within thirty days, to Kimball; and that the judgments of the three first of those creditors, amounting, in the whole, to $1711, were satisfied from the proceeds of the sale, by him, of the goods attached. The fourth attaching creditor directed said Kimball to give priority to the plaintiffs' execution, and treat their attachment as if it had been the fourth instead of the fifth. Kimball caused the plaintiffs' execution to be satisfied for the sum of $352·77 only, and did not return it, nor pay the balance due thereon.

While the actions of the several attaching creditors of Hastings were pending, viz. on the 2d of February, 1837, he and they signed a writing, consenting that the goods attached by Kimball, on their respective writs, should be sold by him within one month, "at public or private sale, at his discretion," and that the proceeds thereof should be held to respond the judgments which might be rendered against said Hastings, "according to the revised statutes, c. 90, § 57." It was not proved that the defendant had any knowledge of this agreement, at the time it was made.

Kimball sold, at private sale, between February 9th and March 26th, 1837, a portion of the attached goods, amounting to $ 2964, leaving unsold goods estimated at $ 1068, which was their original cost. These he afterwards sold at public auction, but it did not appear for what sum, except that the defendant admitted that it was between seven and eight hundred dollars. The money for which the goods were sold was all received by said Kimball.

It was insisted by the defendant's counsel, that the above agreement between Hastings and his attaching creditors, and the acts of Kimball under it, discharged the defendant from all liability for his deputy's doings in reference to said goods. The judge ruled otherwise, and a verdict was returned for the plaintiffs. The defendant moved for a new trial.

*Choate,* for the defendant. The creditors of Hastings made Kimball their special agent to satisfy their executions by means not conferred on him by law, and the sheriff is not answerable for Kimball's misconduct. *Marshall* v. *Hosmer,* 4 Mass. 63, 64. *Bond* v. *Ward,* 7 Mass. 127, 128. *Gorham* v. *Gale,* 6 Cow. 467, *note.* 7 Cow. 739. 15 Wend. 579, 580. *Samuel* v *Commonwealth,* 6 Monr. 174. *Bowmaker* v. *Moore,* 7 Price, 231. Theobald on Prin. & Surety, 118. 154. *United States* v. *Moore,* 2 Brock. 317.

*H. H. Fuller* and *F. Smith,* for the plaintiffs, cited *Kingsbury* v. *Baker,* 17 Pick. 429. *Knowlton* v. *Bartlett,* 1 Pick. 271. *Tuttle* v. *Cook,* 15 Wend. 274. *Walden* v. *Davison,* 15 Wend. 575. *Armstrong* v. *Garrow,* 6 Cow. 465. *Sanderson* v. *Baker,* 2 W. Bl. 832.

PUTNAM, J. It is provided in the Rev. Sts. *c.* 90, § 57, that " when any personal property is attached, whether on one or more writs, and the debtor and all the attaching creditors shall consent in writing to the sale thereof, the attaching officer shall sell the same in the manner prescribed by law for selling the like property on execution ; and the proceeds of the sale, after deducting the necessary charges thereof, shall be held by the officer subject to the attachment or attachments, and shall be disposed of in like manner as the said property would have been

held and disposed of, if it had remained unsold." By the same statutes, *c.* 97, § 23, the sale of goods seized on execution is to be made by *public auction.* But in the case at bar, all the attaching creditors and the debtor agreed, in writing, that the personal property of the debtor, which was then held by the deputy sheriff under attachment, should be sold by him within a month from the date of the agreement at public or *private* sale, at his discretion, and that the *proceeds* thereof should be held to respond the judgment which should be rendered against the debtor, according to the Rev. Sts. *c.* 90, § 57, before cited.

Part of the goods were sold at auction, by Kimball, the defendant's deputy, and part by private sale, pursuant to that agreement, and the proceeds came to his hands. He refuses to apply the proceeds of the sale to the satisfaction of the plaintiffs' execution, and the sheriff defends, because the deputy did not make the sale of all the goods at auction, as the law would have required him to do, if he had seized and sold them upon execution. And the question is, whether that is a sufficient answer to the plaintiffs' claim.

It has been argued for the defendant, that he is answerable only for acts or omissions *colore officii,* and that his deputy has, in the case at bar, acted as the agent of the attaching creditors and of the debtor, and not as the servant of the sheriff. And we agree to the rule derived from the cases cited, that the sheriff is answerable only for breaches of duty enjoined by the law upon his deputy. Thus, in the case of *United States* v. *Moore,* 2 Brock. 317, the marshal was held not to be liable for his deputy who undertook to receive the debt, and to discharge it, on a writ of *capias ad respondendum.* He had no authority from the creditor or from the writ to do any such thing. And in *Gorham* v. *Gale,* 7 Cow. 739, and *Armstrong* v. *Garrow,* 6 Cow. 465, " if the deputy takes a course, in the collection of the execution, out of the line required by the law, as by giving credit, &c., in consequence of the plaintiff's interference, the sheriff will be discharged." This is right. Wherever the deputy departs from the line of his official duty, by the desire or authority of the plaintiff himself, the sheriff is not to be charged ; but where

there has been an unwarrantable departure, the sheriff is to be held liable.

We must distinguish between the defaults of the deputy, when acting under the authority of the plaintiffs, and when acting in his official character. It must be conceded, we think, that Kimball acted as the agent of the debtor and creditors in disposing of the goods at private sale ; and if any loss had arisen from his manner of effecting that sale, it must have been borne by them. If, for example, he had sold upon a credit, and the purchaser had failed, the sheriff would not have been liable, inasmuch as Kim ball did not, in that matter, act in his official character, as the servant of the sheriff, but as the agent of the plaintiffs and others, in virtue of their special authority.

But there is no complaint against the agent in regard to his conduct in making the sale. No suggestion is made that he did not exercise a sound discretion, or that the goods were not sold for a full price. The complaint is, that the deputy of the sheriff refuses to pay the money to the plaintiffs in satisfaction of their execution.

Now the proceeds of the goods, which were attached and sold, represent the goods themselves. They were to be held by the deputy, according to the agreement in the case, to respond the judgment which might be rendered against Hastings, the debtor, according to the Rev. Sts. *c.* 90, § 57. They were to be held by the officer, subject to the attachment or attachments, and should be disposed of in like manner as the property would have been held and disposed of, if it had remained unsold. The plaintiffs' execution was purchased and put into the hands of the deputy, within the time prescribed by the law. It seems to us, that under these circumstances he must be deemed to have the proceeds in his hands, as an officer, and that he was bound by his official duty to apply the same to satisfy the executions in his hands. And his conduct, in regard to the payment of three of the executions, shows his own just estimate of his duty. He has certainly dealt with the proceeds in that respect officially, just as he would have dealt with the goods. And he has enough of the proceeds in his hands, where

with to satisfy the balance which is due on the plaintiffs' execution. Indeed, sufficient property was sold at auction to satisfy the plaintiffs' balance. It seems to us, therefore, to be no defence for the sheriff, that his deputy was the agent of the creditors and of the debtor, in the *sale* of the goods, inasmuch as by the consent and agreement of all concerned, the proceeds came into his hands, to be held and appropriated by him in discharge of the executions against the debtor.

Suppose the creditors had consented to dissolve the attachments, in the belief that the debtor himself would pay the executions, whenever they should be put into the hands of the officer; and that the debtor had paid the money to the officer accordingly. In such case, there would be no ground to deny that the sheriff would be liable, because the attachments had been dissolved. Suppose that the debtor, to avoid the publicity of a sale at auction, had delivered a horse or other chattel to the officer, with directions to sell the same at private sale, and with the proceeds to pay the execution. It would seem clear, that the officer would be bound so to apply the proceeds. It would seem to be very immaterial, by what honest means the debtor was enabled to put the funds into the hands of the officer to discharge the executions. If the debtor should have given him a bill of exchange or negotiable note indorsed, to be by him collected and the proceeds to be paid in discharge of the execution, although the sheriff would not be answerable for any loss, occasioned by his deputy in the manner of collecting, or in the performing of his agency for the debtor, yet if sufficient proceeds actually came into the hands of the deputy, and he refused to return the execution satisfied, we do not perceive any good or legal reason, why the sheriff should not in such case be held responsible for such default.

For these reasons, we all think that judgment must be rendered for the plaintiff according to the verdict.