Joseph W. Patch v. Mildred Squires et al.

February Term, 1933.

Present: Powers, C. J., Slack, Moulton, Thompson, and Graham, JJ.

Opinion filed May 2, 1933.

*Frank E. Barber* and *Ernest W. Gibson, Jr.,* for the plaintiff.

*Carpenter & Clawson* for the defendants.

GRAHAM, J.   This is a proceeding in chancery to set aside certain transfers of bank deposits as in fraud of the marital rights of the plaintiff.   There was a decree dismissing the bill, and the case is here on plaintiff's appeal and exceptions.   From the unchallenged findings it appears that the plaintiff and Abbie A. B. Patch were married in 1905, but they had not lived to-

gether for over twenty years preceding Mrs. Patch's decease, which occurred on August 29, 1931. Mrs. Patch, upon the decease of her mother, became the sole owner of the bank deposits in question, and the accounts stood in her name until August 3, 1931. The plaintiff never reduced to his possession any of the money represented by these accounts.

In July, 1931, Mrs. Patch, being very ill, called Judge Schwenk of Brattleboro to her home, and consulted with him about her property and the disposition of it. On August 3, 1931, Clarence E. Merrill, treasurer of the Brattleboro Trust Company, went to the home of Mrs. Patch, at her request, and he prepared appropriate orders, which were signed by Mrs. Patch, for the transfer of her bank accounts as follows: Accounts Nos. 9360 and 9450 in the Windham County Savings Bank to the names of Abbie A. B. Patch or Harold D. Worden, payable to order of either or survivor; account No. 31765 in the Vermont Savings Bank to the names of Abby A. Bennett (Patch) and Harold D. Worden, payable to either or the survivor of either; account No. 38689 in the Vermont Savings Bank to the names of Abby A. B. Patch or Harold D. Worden, payable to either or the survivor of either; account No. 14116 in Vermont Savings Bank to Abbie A. Bennett (Patch) and payable also to Harold D. Worden, payable to either or the survivor of either; account No. 5830 in the Brattleboro Trust Company to the names of Abbie A. B. Patch or Harold D. Worden, payable to either or the survivor; account No. 1110 to the names of Walter K. Herrick or Abbie A. B. Patch, payable to either or the survivor. These orders were complied with by the respective banks by appropriate entries in the deposit books and also upon the ledger accounts of the banks.

The foregoing accounts, although there is slight difference in the wording of the orders creating them, are treated alike in the record, and we so treat them.

Deposit No. 905 in the Brattleboro Trust Company stands differently. In compliance with the order for the transfer of that account, the bank made an entry upon its books, and in the deposit book, that the deposit should be payable to "Mildred A. Squires or Abbie A. B. Patch, payable to either or the survivor (see inside cover) Mildred A. Squires to draw the interest only and on her decease the balance remaining on this account to be divided equally between Harold D. Worden and Walter

H. Herrick or the full amount to the survivor in case of the decease of one.''

Mrs. Patch retained possession of all the deposit books until her decease, and after the transfers she made withdrawals from some of the accounts. After her death the respective books came into the possession of the transferee named therein.

■ The bill of complaint, as framed, does not attack the validity of the transfers on the ground that the gifts were not completed by a sufficient delivery of the deposit books. There is an attempt by the plaintiff in his brief to present this question under the authority of our holding in *Rice et al. Exrs.* v. *Bennington County Savings Bank,* 93 Vt. 493, 108 Atl. 708. After the decision of that case the statute (G. L. 5376) was amended so as to provide that, when a deposit is made in a bank in the names of two persons, ''the recital of the words 'payable to either or to the survivor' or words of like effect in the order creating such account and signed by the person or persons who furnish the funds for such deposit shall be conclusive evidence, as between the payees and their legal representatives, of the creation of an absolute joint account; but nothing herein shall prevent the proof of fraud, undue influence, or incapacity, to defeat such joint interests.'' No. 97, Acts of 1923. It is unnecessary on the record before us to discuss the extent of the change in our common law effected by this added provision of the statute. It is enough for present purposes to say that its aim was to supersede the decision in the Rice Case by allowing donative intention to prevail without the technical formality of a delivery of the deposit book. That essential element of a valid gift is conclusively presumed when the form of the deposit is in conformity with that described in the statute.

The plaintiff excepted to the refusal of the chancellor to find that these deposits were transferred by Mrs. Patch for the purpose and with fraudulent intent of defeating the plaintiff's claim upon her estate, and with the fraudulent intent of placing the deposits where, upon her decease, they would not become a part of her estate, thereby depriving the plaintiff of his marital interest therein.

■ ■ The plaintiff's case was presented on this theory. He alleged that the transfers were a fraud upon his marital rights, and the law casts upon him the burden of proof of the issue. The fraudulent intent must be proved as a fact, beyond a rea-

sonable doubt, and there is no presumption to aid him. The presumption is in favor of innocence and not of guilt. *Dunnett et al.* v. *Shields & Conant,* 97 Vt. 419, 426-429, 123 Atl. 626; *Tillison* v. *Tillison,* 95 Vt. 535, 537, 116 Atl. 117.

In addition to the facts already stated, the evidence tended to show that the deposits transferred amounted to about $13,000. Mrs. Patch at the time of her death owned personal property valued at $700 and an interest in real estate of the value of $2,500. Claims allowed against her estate amounted to $800, and the expenses of her funeral amounted to $371. One witness testified that at the time the orders of transfer were signed Mrs. Patch said that Mr. Patch had not lived with her for twenty-six years, that he had never supported her, and that she was ''going to have her money go where she wanted it to.'' But the same witness also testified that Mrs. Patch did not say that the transfers were being made to keep the money from her estate, but rather she said her purpose was to make gifts of the bank accounts so the money would go to the persons whom she desired should have it. It is not questioned that the bank deposits were the sole and separate property of Mrs. Patch (see G. L. 3524), and that she had the uncontrolled dominion over them during her lifetime. *Aigner* v. *White's Admx.,* 85 Vt. 446, 448, 82 Atl. 666. Her power of disposition, however, has its limitations; the act by which she transferred the deposits must be a legal act, and not an illegal one. It would be an illegal act if she made gifts of the money with the fraudulent intent of preventing her husband from obtaining his distributive share of her property. *Dunnett et al.* v. *Shields & Conant, supra; Nichols* v. *Nichols,* 61 Vt. 426, 18 Atl. 153; *Green* v. *Adams,* 59 Vt. 602, 10 Atl. 742, 59 A. R. 761; *Thayer* v. *Thayer,* 14 Vt. 107, 39 A. D. 211. It is not enough to show, merely, that the effect of the gifts was to defeat the plaintiff's distributive share of his wife's personal property. The test of invalidity is whether the act creating the gifts was executed *mala fide* and not *bona fide*. *Dunnett et al.* v. *Shields & Conant, supra,* at pages 428, 429 of 97 Vt., 123 Atl. 626; *Evans* v. *Evans,* 78 N. H. 352, 100 Atl. 671.

We must assume that the chancellor considered all of the pertinent evidence of facts and circumstances in arriving at his conclusion that the transfers are valid. Conceding that the evidence strongly indicates a purpose on the part of Mrs. Patch to deprive the plaintiff of his distributive share in the

transferred bank deposits, we cannot say, in view of the required burden and measure of proof, that it is so convincing as to compel that conclusion. *In re Bugbee's Will,* 92 Vt. 175, 184, 102 Atl. 484; *Partridge* v. *Cole,* 98 Vt. 373, 377, 127 Atl. 653. It was the province of the chancellor, as trier of the facts, to weigh and interpret doubtful testimony. *White River Chair Co.* v. *Connecticut River Power Co.,* 105 Vt. 24, 162 Atl. 859, 865; *McClary* v. *Hubbard,* 97 Vt. 222, 242, 122 Atl. 469. Besides, there was evidence of other facts and circumstances for consideration. The plaintiff had not lived with or supported his wife for over twenty-six years. The money came to Mrs. Patch by gift from her mother. The donees were her kin who had lived in her household, and some, if not all, were caring for her in her illness. The chancellor might well, as he probably did, apply to all the facts and circumstances this test: Would the ordinary person in Mrs. Patch's situation have made the gifts in question? *Evans* v. *Evans,* 78 N. H. 352, 100 Atl. 671, 672. It cannot be said, as a matter of law, that an affirmative answer was unwarranted, and, in the circumstances, the refusal of the request was not error.

▮ The plaintiff briefs other exceptions to the refusal of the chancellor to find as requested. Even assuming that the exceptions were properly saved and are appropriate to present the question, the requests relate to minor subordinate facts on which the ultimate fact was to be predicated. As to these, the court was not bound to report them. *Partridge* v. *Cole,* 93 Vt. 373, 375, 127 Atl. 653, and cases cited. *Trask et al.* v. *Walker's Estate,* 100 Vt. 51, 65, 134 Atl. 853. Since, as we have seen, they were not sufficient, taken singly or in combination, to compel the conclusion of the ultimate fact, they become immaterial.

The chancellor found that it was the intention of Mrs. Patch to make gifts to the respective title holders with her, and that the transfers were made with the intention to create a joint ownership of the respective accounts in herself and the respective parties whose names appear with hers on the several bank books. The only exceptions taken to these findings are that they are incomplete because it is not also found that it was Mrs. Patch's intent and purpose to defeat the rights of the plaintiff as surviving husband in her estate. What we have said in our discussion of other questions disposes of these exceptions.

██ ██ The plaintiff says in his brief that the transfer of account No. 905 in the Brattleboro Trust Company cannot be sustained as a valid gift because the written directions as to distribution clearly indicate an attempted testamentary disposition of property. This question was not presented below, nor is it sufficiently briefed here to require our attention. But the contention is unsound. A testamentary disposition is one which does not take effect unless nor until the donor dies. If the maker intended to transfer some present interest, the instrument is not testamentary in character. *Innes* v. *Potter*, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896. The intention of Mrs. Patch to make gifts *in præsenti* has been found by the chancellor. This general finding applies to account No. 905 as well as to the other deposits, and controls the determination that the instrument is not testamentary. It is not necessary for the decision of the case to determine whether this order of transfer created a completed gift or constituted a declaration of trust, because questions affecting the rights of the donees or beneficiaries, *inter sese*, are not presented by this record. Whichever it is, the claims of the plaintiff are equally precluded. See, *Pope* v. *Burlington Sav. Bank*, 56 Vt. 284, 48 A. R. 781.

We have passed upon the merits of the questions presented as if all parties whose interests would be affected by a final decree were before the Court. They are not. The administrator of Mrs. Patch's estate is not a party to the proceedings. The Windham County Savings Bank and the Vermont Savings Bank are not named as parties defendant. The defendant, Walter K. Herrick, has not been served with process, and no appearance has been entered for him.

██ It is a rule of chancery that all parties interested in the subject-matter of the suit are to be made parties, either as plaintiffs or defendants. *O'Brien* v. *Holden*, 104 Vt. 338, 343, 160 Atl. 192; *American Surety Co.* v. *Creamery Commissioners et al.*, 98 Vt. 313, 320, 127 Atl. 289; *Day* v. *Cummings*, 19 Vt. 496, 499; *McConnell* v. *McConnell*, 11 Vt. 290. The necessity of joining all essential parties is to conclude their rights by the decree, and to obviate future litigation. *McConnell* v. *McConnell, supra; Day* v. *Cummings, supra.* As soon as it developed that there were necessary parties not of record, the chancellor should have stopped the proceedings below, ordered an amendment of the bill, and issued citations to compel them to enter,

either as plaintiffs or defendants. See chancery rule 12. But since no reason is given, and none is apparent, why the rights of the parties now of record should not be concluded by the proceedings already had, the entry is:

*Decree affirmed, with costs, as to the parties of record, and cause remanded with directions that before entry of final decree other essential parties be brought in and their rights determined by appropriate proceedings, if necessary, which are not inconsistent with the views herein expressed.*