DORA RUBIN, Respondent, *v.* MYRUB REALTY Co., INC., and Others, Appellants. (Consolidated Appeals.)

First Department, May 10, 1935.

*Stanley Garten,* for the appellants.

*Maurice Z. Bungard* of counsel [*Harold L. Grossman* with him on the brief; *Maurice Z. Bungard,* attorney], for the respondent.

O'MALLEY, J.   Two orders are before us, one granting plaintiff's motion for an examination before trial and the other denying defendants' counter-motion for judgment on the pleadings.   We are of opinion that both orders were properly made and should be affirmed.

The allegations of the complaint, briefly summarized, show these facts: The plaintiff was a widow and Myer Rubin, a widower. The defendants Louis Rubin, Morris Rubin and Beckie Goldstein were his children by a former marriage.   Myer Rubin stated and

represented orally to the plaintiff, prior to the marriage, that if she would marry him, she would share in the income derived from certain real property described in the complaint and owned by him and that upon his death she would share therein to the extent of one-third.

Thereafter, and on March 1, 1932, prior to the marriage, which took place March 26, 1932, Myer Rubin conveyed the real estate in question to the corporate defendant Myrub Realty Co., Inc., and caused the stock of the corporation to be issued to the defendant Moebus, to be held in trust for Myer Rubin during his life and after his death to be equally divided among his said children. The conveyance was made without consideration, was " in fraud and deceit of the plaintiff's rights as the contemplated and betrothed wife " of said Myer Rubin, and of her rights as his wife, and was " in fraud and deceit of her rights as the wife and the widow " of said Myer Rubin.

Myer Rubin between March 1, 1932, and August 16, 1933, the date of his death, retained and exercised control and right of ownership over the properties and received the income therefrom. He died on the latter date leaving the plaintiff his lawful widow and the defendants Louis Rubin, Morris Rubin and Beckie Goldstein, his children, surviving. The plaintiff did not consent to the conveyance to the corporate defendant and had no knowledge thereof until after Myer Rubin's death.

The prayer for relief seeks to have the conveyance declared void against the plaintiff and to have it adjudged she is entitled to an interest therein as the wife of Myer Rubin, as if he had died seized in fee simple thereof. An accounting of the rents and profits, of which the plaintiff seeks one-third, is sought.

The answer admits the ownership of the property by Myer Rubin and the conveyance in trust under the terms as alleged in the complaint. The first defense alleges an agreement between plaintiff and Myer Rubin prior to the marriage that the plaintiff and he would enjoy the income of the property during his life, but that as he had purchased it with funds accumulated as a result of his own efforts and those of his former wife and children, he had arranged matters so that upon his death the ownership would pass to his children without any interest in the plaintiff; that she knew of these arrangements and agreed thereto and knew at the time of the marriage that legal ownership was no longer vested in Myer Rubin; that he and the plaintiff enjoyed the income therefrom during his life and that pursuant to the alleged understanding the plaintiff retained possession of any property she had at the time of her marriage.

The second defense is predicated upon an estoppel, it being alleged plaintiff was chargeable with notice of the conveyance, which was of record, or could have gained such knowledge in the exercise of reasonable diligence.

The third defense is to the effect that the agreement sued upon was in consideration of marriage, and, being oral, void under section 31 of the Personal Property Law, and also void under section 242 of the Real Property Law, as it related to creating an interest in real property.

The fourth defense is to the effect that as the agreement was made after September 1, 1930, the plaintiff had no dower in the property and the conveyance to the corporate defendant was in violation of none of her rights.

Defendants' motion for judgment on the pleadings was predicated upon alleged insufficiency of the complaint, but more particularly upon the claimed sufficiency of their fourth defense as a matter of law. Since the abolition of dower in this State (Real Prop. Law, § 190, as amd. by Laws of 1929, chap. 229, in effect September 1, 1930), a husband, it is asserted, may dispose of his real property as he sees fit. For reasons hereinafter stated we deem the complaint sufficient and the particular defense relied upon as insufficient.

It has long been settled in this State that a conveyance of the character with which we are here concerned, made in contemplation of marriage, and while the arrangements therefor are pending, is a fraud upon the prospective wife, and the intent to defraud may be inferred from the conveyance itself under such circumstances. (*Byrnes* v. *Owen*, 243 N. Y. 211, 217; *Youngs* v. *Carter*, 10 Hun, 194; *Bliss* v. *West*, 58 id. 71; *Carpenter* v. *Commings*, 51 id. 638; 21 N. Y. St. Repr. 536.) The same rule has been frequently declared in other jurisdictions. (*Smith* v. *Smith*, 6 N. J. Eq. 515; *Jarvis* v. *Jarvis*, 286 Ill. 478; 122 N. E. 121; *Dunbar* v. *Dunbar*, 254 Ill. 281; 98 N. E. 563; *Payne* v. *Tatem*, 236 Ky. 306; 33 S. W. [2d] 2; *Bookout* v. *Bookout*, 150 Ind. 63; 49 N. E. 824; *Beere* v. *Beere*, 79 Iowa, 555; 44 N. W. 809; *Collins* v. *Collins*, 98 Md. 473; 57 A. 597; 19 C. J. Dower, §§ 159, 160.)

For the historic development and the reason for the rule in England and in this country see *Thayer* v. *Thayer* (14 Vt. 107, 120); also Notes and Comment, Cornell Law Quarterly (April, 1935, vol. XX, No. 3, pp. 381, 382, 383).

The New York decisions cited were rendered prior to the amending of section 190 of the Real Property Law, *supra*, by which the wife's dower was abolished. By the same statute, section 83 of the Decedent Estate Law was amended so far as is here material, to provide: " The real property of a deceased person, male or

female, not devised, shall descend  *  *  *  in manner following; 1. One-third part to the surviving spouse."

Section 18 of the Decedent Estate Law was also enacted by the same statute (Laws of 1929, chap. 229), and gave the surviving spouse a right of election to take the share which such spouse would have been entitled to take in case of the death of the deceased spouse intestate, as against a different provision in the will.

When these amendments are considered in their full intendment it will be found, we think, that the reason for the rule first announced still obtains. It must be borne in mind that the effect of these amendments was to increase, rather than decrease, the rights of the wife in her husband's property. The Commission appointed to investigate and recommend as to the advisability and revision of the Real Property Law, Personal Property Law, and the Decedent Estate Law for the purpose of modernizing the laws relating to estates and the systems of descent and distribution of property, studied and prepared our new Decedent Estate Law and recommended to the People and the Legislature its enactment. The Commission added at the end of section 18, *supra*, the following note: " The section gives an increased right to the surviving wife or husband in lieu of the existing rights of dower and curtesy." (McKinney's Dec. Est. Law, § 18, note; see, also, Laws of 1929, chap. 229, § 20.)

What are the increased rights which were secured to the wife by the new legislation? Since the enactment of section 18, *supra*, an increased right to the surviving wife or husband is given in lieu of former dower and curtesy and the husband cannot by will divest a wife of her distributive share of the realty and personalty awarded under section 83, *supra*. This being so, it would seem that there is now greater reason to sustain this type of action because of such increased interest of the surviving spouse.

Decisions in other jurisdictions where dower has been abolished are pertinent and informative. Vermont, in abolishing dower, substituted " a new dower " which gave to the surviving spouse a share of the real property of which the husband had *died seized*, as distinguished from that " *owned during coverture.*" (See Public Laws of Vermont [1933], § 2951 and annotations.)

Shortly after the enactment of this law the case of *Thayer v. Thayer* (*supra*) was decided. The question presented was the right of a husband during his life to dispose of his property in such a manner that he would derive the benefits therefrom during his life and yet not die seized thereof. Shortly before his death, the husband conveyed all of his property, both real and personal, to his children without any valuable consideration, with intent to

defeat his wife of dower and her share in his personal estate to which under the statute she was entitled to one-third after the payment of his debts and of which the husband could not deprive her by will nor by jointure, except *at her election.*

The conveyance by the husband was to one son in trust for him and other children by a former marriage. Possession and use, however, were reserved to the grantor during his life. It was held that such a conveyance was fraudulent against the claims of the wife's new dower interest and her distributive share under the statute. The action there, as here, was brought after the death of the husband and it was held in the circumstances the husband must be deemed to have been the owner of the property at the time of his death. The conclusion of the court, stated at page 123, was as follows: " The conclusion, then, to which we come, is, that the oratrix had, in the life time of her husband, such rights as should be recognized, protected and enforced; that the attempt to elude these rights, in the manner disclosed in this case, was *mala fide,* and a *fraud* upon the law and upon the marital rights of the oratrix, and that, as a consequence, the husband, so far as respects the widow, must be regarded, at the time of his death, as being the owner and having the *seizin* of the property in question. This result, we think, is in accordance with well settled principles, and such as sound policy and justice dictate."

A like holding is to be found in other States where dower and curtesy have been abolished. (*Grover* v. *Clover,* 69 Col. 72; 169 P. 578; *Smith* v. *Smith,* 22 Col. 480; 46 P. 128; *Payne* v. *Tatem, supra.*) (See, also, *Evans* v. *Evans,* 78 N. H. 352; 100 A. 671; *Walker* v. *Walker,* 66 N. H. 390; 31 A. 14.)

In *Grover* v. *Clover* (*supra*) it was stated: " We think the case comes clearly within the principle announced in *Smith* v. *Smith,* 22 Colo. 480; 46 P. 128; 34 L. R. A. 49; 55 Am. St. Rep. 142. In that case and under a similar state of facts, Chief Justice HAYT, in a very able opinion held that notwithstanding that there exists in this state no right of dower, yet the spirit and letter of our statutes imposes the duty upon the husband having property, to provide for the support and comfort of his widow after his demise, and that where the husband disposed of his property, both real and personal, the transaction was colorable merely, and resorted to by him for the purpose of defeating his wife's right, but with the intent to reserve the benefit of the property to himself for life, it is a fraud upon the rights of his wife, from which she may be relieved after death."

Since the abolition of dower in this State a wife's right to maintain an action of the precise character here involved has been

sustained by the Second Department in a recent decision (*LeStrange v. LeStrange*, 242 App. Div. 74). As stated in the brief of respondent in that case, while a husband or prospective husband may at the present time dispose of his property without consent of his wife, or prospective wife, he may not in contemplation of marriage " by means of a mere colorable subterfuge, appear to have disposed of his property and yet retain the property for his own use and benefit, the purpose, intention and effect of which is to remain seized of his property to the last drawn breath of life, and yet, upon the instant of death to effect a transfer of the property free from any claims of the surviving spouse."

Our conclusion is, therefore, that the complaint is sufficient and that the special defense relied upon does not entitle the defendants to judgment on the pleadings.

It follows, therefore, that the orders should be affirmed, each with twenty dollars costs and disbursements to the respondent.

MARTIN, P. J., McAvoy, TOWNLEY and GLENNON, JJ., concur.

Order denying defendants' motion for judgment on the pleadings affirmed, with twenty dollars costs and disbursements.

Order granting plaintiff's motion for examination before trial affirmed, with twenty dollars costs and disbursements. The date for the examination to proceed to be fixed in the order. Settle order on notice.